558 P.2d 942

**Jason SCHWAB, a minor, by and through his next friend, Deborah Jane Acosta, Appellant,**

v.

**STATE FARM FIRE & CASUALTY CO., a corporation, Appellee.**

**No. 2 CA–CIV 2121.**

Court of Appeals of Arizona, Division 2.

Oct. 12, 1976.

Rehearing Denied Nov. 9, 1976.

Petition for Review Denied Dec. 14, 1976.

Miller, Pitt & Feldman by Janice A. Wezelman, Tucson, for appellant.

Chandler, Tullar, Udall & Richmond by D. B. Udall, Tucson, for appellee.

HATHAWAY, Judge.

This is a case in which Cynthia Mary Schwab, the named insured under a policy issued by appellant, was killed while a passenger in her own vehicle driven by a permissive user. The surviving child of the named insured brought suit against the permissive user. Appellee, State Farm Insurance, denied coverage on the ground that the policy excluded coverage for bodily injuries to the named insured. Appellant sought a declaratory judgment that State Farm's owner exclusion provision is invalid. This is an appeal from the lower court's judgment upholding the exclusion.

Appellant presents two separate arguments for invalidating the exclusion. First, he asserts that the exclusion conflicts with the public policy expressed in Arizona's Financial Responsibility Act. Second, he argues that the policy language is ambiguous and therefore must be construed against the insurance company.

We conclude that the exclusion does not conflict with the public policy of the Financial Responsibility Act, as interpreted by the Arizona Supreme Court. In *New York Underwriters Insurance Company v. Superior Court,* 104 Ariz. 544, 456 P.2d 914 (1969), the Arizona Supreme Court found that the Arizona Financial Responsibility Act does not "restrict the privilege of an individual to contract with his insurance carrier to exclude his own personal recovery under the policy terms in the event of his own injury." 104 Ariz. at 545, 456 P.2d at 915. The court therefore approved the rule that "policies containing clauses which specifically exclude from coverage injuries sustained by the named assured, are effective to preclude the company's liability to such named assured." The following language was approved if limited to the named insured, the "policy does not apply to bodily injury to the insured." Thus, Cynthia Mary Schwab, as the named insured under the State Farm policy, was free to contract to exclude coverage of her own bodily injuries.

The State Farm policy excludes liability coverage for bodily injuries of "any insured." Appellant argues that this does not specifically exclude the "named insured" and therefore does not conform to the requirements of *New York Underwriters v. Superior Court.* However, the exclusion in *New York Underwriters,* supra, also did not use the words "named insured" but referred to "the insured." The language in the instant case excludes injuries to "any insured." The court in *New York Underwriters* held that the "exclusion . . . as limited to the named insured himself is not contradictory to the provisions of A.R.S. § 28–1170, and . . . is not illegal or void." Likewise, the exclusion in the instant case as applied to the named insured is valid.

Appellant contends that subsequent opinions of the Arizona Supreme Court have supplied a definition of "insured" which was not present at the time the court decided *New York Underwriters,* supra. Appellant argues that, because of these later cases, policy language such as that found in *New York Underwriters* and in the instant case does not refer to the named insured but rather to the permissive user if he is the tortfeasor. This conclusion is erroneous. The cases upon which appellant relies for this changed definition of "insured" are *Farmers Insurance Group v. Home Indemnity Co.,* 108 Ariz. 126, 493 P.2d 909 (1972), and *New York Underwriters Insurance Company v. Spiller,* 109 Ariz. 31, 504 P.2d 932 (1973).

In *Farmers* and *Spiller,* the exclusions involved differed significantly from the one at issue here. *Farmers* dealt with an "employee exclusion" and *Spiller* involved a "household exclusion." In both cases the "insured" in a policy exclusion was held to be the permissive user who was the tortfeasor. These holdings were necessary in order to effectuate the purpose of the Financial Responsibility Act. This purpose is to protect "[t]he public using the highways . . . from financial hardship resulting from the use of automobiles by financially irresponsible persons." *Farmers Insurance Group v. Home Indemnity Co.,* 108 Ariz. 126, 128, 493 P.2d 909, 911 (1972). The *New York Underwriters* holding is expressly recognized by the Arizona Supreme Court to be a limitation upon the application of the above principle. Id. at 129, 493 P.2d at 912. It does not violate public policy for the named insured to contract with the insurer to limit or exclude coverage for bodily injury to the named insured.

The policy in *Farmers* excluded coverage for "bodily injury to any employee of the insured . . . ." Id. at 128, 493 P.2d at 911. The court noted that "the purpose of the exclusion is to protect the owner from the expense of double coverage where his employee is covered by workmen's compensation." Id. at 129, 493 P.2d at 912. In *Farmers,* the court refused, in an employee-exclusion context, to interpret the words "the insured" as meaning the named insured when the employee had not been injured by the employer but rather by a third party. The court found that "to apply the exclusion without limitation to defeat cov-

erage of third parties frustrates the purpose of the Financial Responsibility Act." Id. The court determined that the injured employee was an innocent third party who should be protected. The situation in *Farmers* was thus quite different from that in the case sub judice. Cynthia Schwab was not a third party but instead contracted with State Farm to exclude coverage for her bodily injuries.

The holding in *Spiller,* like that in *Farmers,* also was necessary in order to avoid conflict with the Financial Responsibility Act. *Spiller* involved a household exclusion under which the policy did not apply "to bodily injury to . . . any person, if such person is related by blood, marriage, or adoption to, and is a resident of the same household as the insured . . . ." The court expressly relied on *Farmers* in holding that "the insured" in this context referred to the omnibus insured if he is the tortfeasor. The court's reliance on *Farmers* indicates that the same policy considerations underlie its conclusion. To hold otherwise in *Spiller* would have resulted in a denial of coverage for liability for injuries to a person other than the named insured. The *New York Underwriters* reasoning permits an exclusion only for injuries of the named insured since the named insured is able to contract for such an exclusion and receives a reduced premium in exchange for it. To exclude coverage for injuries to third party members of the household of the insured violates the statutory omnibus clause. *Jenkins v. Mayflower,* 93 Ariz. 287, 380 P.2d 145 (1963).

In neither *Farmers* nor *Spiller* did the court's interpretation of "insured" as meaning the omnibus insured tortfeasor result in recovery by the named insured. Instead, the court's interpretation was arrived at for the purpose of allowing recovery by a third person who would otherwise have been without protection and who had not entered into any contract with the insurance company.

■ The above interpretation of *Farmers* and *Spiller* is reinforced by the later case of *State Farm Mutual etc. v. Transport In-*

*demnity,* 109 Ariz. 56, 505 P.2d 227 (1973). In *Transport* the Supreme Court made it clear that the word "insured" in a policy exclusion would be construed to mean "permissive user" only when necessary to effectuate the purpose of the Financial Responsibility Act. Any interpretation of "insured" that would deny coverage to injured persons who never contracted with the company, violates the policy of the Financial Responsibility laws. The court in *Transport* stated that an exclusion of such a person "*from the benefits* of the policy . . . would be equally contra to the State's public policy." 109 Ariz. at 58, 505 P.2d at 229. It refused to extend the meaning of "the insured" to a non-tortfeasor permissive user. This refusal was based both on the prior holdings in *Farmers* and *Spiller* and also on the court's reluctance to exclude someone who "made no contract with State Farm and received no reduced premium." 109 Ariz. at 59, 505 P.2d at 230.

Division One of this court has recently held that "the 'household exclusion' clause when applied to persons other than the named insured is void as being in contravention of the Arizona Safety Responsibility Act." *Stevens v. State Farm Mutual Automobile Ins. Co.,* 21 Ariz.App. 392, 393, 519 P.2d 1157, 1158 (1974). This holding was founded on the reasoning that "exclusions in automobile insurance policies which attempt to prohibit recovery under a policy to injured third parties are void." Id. at 394, 519 P.2d at 1159.

Cynthia Schwab was not an injured third party but was the named insured. Arizona public policy permits the named insured to contract with the insurer for exclusion of coverage for her own bodily injuries. We are compelled to conclude that the exclusion in this case does not violate the policy of the Financial Responsibility Act.

Appellant's second contention is that the State Farm policy is ambiguous and hence must be construed in favor of the insured. Such a construction would invalidate the exclusion.

■ We are compelled to reject this argument also. The exclusion in question is

not ambiguous. The term "insured," found in the exclusion, is defined to encompass the "named insured." The policy states that "the unqualified word 'insured' includes . . . the named insured . . . ."

Under Arizona law,

"A contract of insurance is like any other contract. It is not a collection of separate unrelated parts. It is a whole document; each part must be read and interpreted in connection with all other parts thereof. When the meaning and intent of the contract is clear, it is not the prerogative of the courts to change or rewrite it in an attempt to avoid harsh results." *Lawrence v. Beneficial Fire & Casualty Ins. Co.,* 8 Ariz.App. 155, 159, 444 P.2d 446, 450 (1968).

The mere fact that the definition of insured is on a different page than the exclusion is not enough to render the policy ambiguous. The section of the policy containing exclusions is labeled "Exclusions" and the section containing definitions is denominated "Definitions." The reasonable reader can made no mistake as to the content of these sections. This court has previously applied the principle that:

"While insurance contracts are construed most favorably to the insured where the meaning of the language is doubtful, such rule is inapplicable when the language is not doubtful and is defined within the contract itself. *U.S. Fidelity & Guaranty Co. v. Cal.-Ariz. Const. Co.,* 21 Ariz. 172, 186 P. 502 (1920)." *St. Paul Fire & Marine Insurance Co.,* 19 Ariz. App. 5, 504 P.2d 546 (1972).

This principle governs here since the term "insured" is clearly defined to include the "named insured."

Appellant relies upon *State Farm Mutual Auto Insurance Co. v. Jacober,* 10 Cal.3d 193, 110 Cal.Rptr. 1, 514 P.2d 953 (1973). *Jacober* invalidated an exclusion similar to the one at issue on the ground that it was ambiguous. We decline to follow *Jacober* for two reasons. First, there is a significant difference between the language of the exclusion in *Jacober* and the language we are considering here. The *Jacober* ex-

clusion referred to bodily injuries of "*the* insured," 110 Cal.Rptr. at 3, 514 P.2d at 954 (emphasis added). In contrast, the instant exclusion refers to "*any* insured," (emphasis added). The use of the modifier "any" eliminates all possibility of ambiguity. It is remotely possible that a named insured might mistakenly conclude that he is not "the insured" to whom the exclusion applies. There is no way, however, that a named insured can reasonably believe that he is not "any insured." The words "any person insured" have been interpreted to include the named insured despite the absence of a policy definition of "insured." *Hebert v. North British and Mercantile Ins. Co.,* 204 So.2d 655 (La.App.1967). Since the policy at issue defines "insured" to include the "named insured," there is no possibility of confusion.

Our second reason for not following *Jacober* is that its holding is contra to the weight of authority. Several other jurisdictions have considered an exclusion identical to that in *Jacober* and held it not ambiguous. *Wheeler v. State Farm Mutual Automobile Insurance Co.,* 438 F.2d 730, 732–33 (10th Cir. 1971); *Tenopir v. State Farm Mutual Co.,* 403 F.2d 533, 536 (9th Cir. 1968); (applying Alaska law); *Newark Insurance Co. v. State Farm Mutual Auto. Ins. Co.,* 164 Colo. 498, 436 P.2d 353, 356 (1968); *Shaw v. State Farm Mutual, etc., Ins. Co.,* 107 Ga.App. 8, 129 S.E.2d 85 (1962); *Lee v. State Farm Mutual, etc., Ins. Co.,* 265 Or. 1, 507 P.2d 6 (1973). See *Kelsay v. State Farm Mut. Auto. Ins. Co.,* 242 Md. 528, 219 A.2d 830 (1966); *Capece v. Allstate Ins. Co.,* 88 N.J.Super. 535, 212 A.2d 863 (1965).

It is worthy of note that in two of the above cases, the source of the alleged ambiguity was the use of the word "the" to modify "insured." *Tenopir v. State Farm Mutual Co.,* supra; *Newark Insurance Co. v. State Farm Mutual Auto. Ins. Co.,* supra. In *Newark* the party claiming ambiguity expressly argued:

"that the State Farm policy is ambiguous in that it uses the term *the* insured, in-

stead of *any* insured . . ." 436 P.2d at 356.

It should also be pointed out that although the issue of ambiguity was not reached, the exclusion upheld in *New York Underwriters,* supra, was an exclusion of bodily injuries of "the insured" who was the named insured. Other jurisdictions have also upheld this exclusion without considering whether it was ambiguous. *Violins v. State Farm Mutual Auto. Ins. Co.,* 260 So.2d 559 (Fla.App.1972); *State Farm Mut. Auto. Ins. Co. v. Cartmel,* 250 Ark. 77, 463 S.W.2d 648 (1971).

We therefore hold that the subject exclusion is neither ambiguous nor violative of the public policy of Arizona.

Affirmed.

HOWARD, C. J., and KRUCKER, J., concur.